SEAN K. KENNEDY (Cal. Bar. No. 145632)
Federal Public Defender
(E-mail: Sean_Kennedy@fd.org)
KOREN BELL (No. 268614)
(E-mail: Koren_Bell@fd.org)
ANNE HWANG (No. 223094)
(E-mail:  Anne_Hwang@fd.org)
321 East 2nd Street
Los Angeles, California  90012-4202
Telephone (213) 894-5312/1418
Facsimile (213) 894-0081

Attorneys for Defendant
LETHA MONTEMAYOR TUCKER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 13-78-ABC |
| Plaintiff, | **EX PARTE APPLICATION FOR ORDER FOR IMMEDIATE TRANSPORTATION TO WHITE MEMORIAL HOSPITAL, MEDICAL EVALUATION, AND NECESSARY TREATMENT; DECLARATION OF DFPD BELL; EXHIBIT A** |
| v. | |
| LETHA MONTEMAYOR TUCKER, | |
| Defendants. | |

Letha Montemayor Tucker, by and through her counsel, Federal Public Defender Koren L. Bell, hereby files this ex parte application requesting a Court Order for immediate transportation to White Memorial Hospital, medical evaluation, and necessary

//
//
//
//
//

treatment.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: November 21,  2013          By _/s/ *Koren L. Bell*_____
                                    KOREN L. BELL
                                    Deputy Federal Public Defender

2

## DECLARATION OF KOREN L. BELL

I, Koren L. Bell, hereby state and declare as follows:

1.      I am the Deputy Federal Public Defender appointed to represent Ms. Tucker in this matter, together with Anne Hwang.  I make this declaration to seek a Court Order for immediate transportation to White Memorial Hospital,  medical evaluation, and necessary treatment for Ms. Tucker.  If the Court is, however, disinclined to grant the Order on the basis of this application alone, we respectfully request a hearing on the relief sought herein, as set forth below and in the attached proposed Order.

2.      Ms. Tucker  has been suffering from a number of health problems over the last several months that have become increasingly serious, and have gone un-treated or improperly treated.  Over the past two months, the defense team has  attempted to communicate our concerns to the Bureau of Prisons ("BOP") through different channels, but that approach has not worked to address Ms. Tucker's health problems.  Rather, we are repeatedly told that our concerns have been "conveyed" to the Health Services Department, without further substantive detail about what, if anything, the BOP plans to do to address the issues.  When we visit with Ms. Tucker, what we see is that her condition has deteriorated, while the Health Services Department stands by.   Ms. Tucker's pain is such that she has great difficulty sleeping, and, on occasion, meeting with us for legal visits.  She recently refused a legal visit because she was in too much pain to come down.  She often lies in bed for the whole day because she cannot bear to do anything else.  Our only recourse at this juncture is an Order from this Court.

3.      The overview of Ms. Tucker's conditions are as follows:

•      Ms. Tucker is a 52-year-old woman who suffers from grand mal seizures, and has been hospitalized twice at White Memorial in connection with this disorder since she arrived to BOP custody.  One of these visits to the Hospital was on account of BOP's administration of an overdose of Dilantin, the medication prescribed by BOP for Ms. Tucker's seizures.

•      Over six months back, Ms. Tucker developed a mass in her neck; that mass has

3

1    never been evaluated, despite BOP's assurance, months back, that it would be.

2    •   Ms. Tucker then developed cysts in both legs.   First, she developed a cyst in her
3        one leg several months back.  That cyst has left her wheelchair-bound because it
4        is so large that Ms. Tucker cannot stand without falling down.  Ms. Tucker has
5        been told that the cyst will not be treated because she is "pre-trial," and thus, the
6        Marshals would bear the expense of the treatment.  She would thus remain wheel-
7        chair-bound until after these proceedings conclude.

8    •   That first cyst has in fact caused her to fall, breaking her thumb – and, it is now
9        believed, a second bone in her arm.  Only the thumb was ever cast, however.  The
10       second bone was not.  The thumb cast cast was recently removed, and Ms. Tucker
11       was told that the thumb had "healed."  But her entire hand and wrist remain very
12       swollen and she cannot move her fingers.   Ms. Tucker is still in constant,
13       sometimes nearly unbearable pain.

14   •   As to the second suspected broken bone in Ms. Tucker's arm, that bone has not
15       been evaluated or cast.  Although it was a member of the MDC medical staff,
16       itself, that informed Ms. Tucker, several weeks back, that there may be a second
17       broken bone in her arm which would account, in turn, for the swelling, pain, and
18       limited nature of movement in her hand and wrist, BOP has not taken Ms. Tucker
19       back to White Memorial to evaluate the arm or provide necessary treatment.

20   •   Several weeks back, Ms. Tucker discovered a cyst in her second leg.  Like the
21       long-standing mass in her neck, and the second suspected broken bone in her arm,
22       this cyst has not been evaluated to determine if treatment is necessary.

23   •   Ms. Tucker is not given sufficient medication to combat the pain she is
24       experiencing in connection with her arm, wrist and hand.  The ibuprofen provided
25       by BOP does not reduce the pain enough for her to sleep, and on one occasion,
26       enough for her to bear the trip down to the visiting room to meet with counsel.

27   •   Ms. Tucker was told on or about September 19 that she has been on a "list" to see
28       the orthopedist at White Memorial.  It remains unclear at this juncture whether she

4

1   has in fact been scheduled for evaluation and necessary treatment at White
2   Memorial for a date certain, and, if so, which of her problems that evaluation will
3   address.

4       4.      Given the lack of responsiveness by BOP, despite various inquiries by the
5   defense team and Ms. Tucker's own complaints over the course of several months,  and
6   the obvious nature of Ms. Tucker's deteriorating condition and enduring pain, we ask that
7   the Court Order the requested relief.

8       5.      I have conferred with AUSA Joey Blanch respecting the requested relief.
9   Ms. Blanch stated that she received a call from MDC about two weeks ago now in which
10  they informed Ms. Blanch of my inquiries and Ms. Tucker's complaints, but assured her
11  that "MDC is taking care of her."  MDC also requested that Ms. Blanch oppose any
12  request by the defense for a Court Order.  The government thus opposes this request.

13      6.      To the extent it is of any guidance to this Court, Judge Selna recently
14  confronted the government's opposition to a request for immediate medical transportation
15  to White Memorial Hospital, evaluation and treatment for another one of my clients in
16  the matter of *U.S. v. Andre Wegner*, CR 12-105-JVS.  In that case, Judge Selna initially
17  ordered the requested relief.  *See* Exhibit A.  Thereafter, the government filed an
18  application to vacate the court's Order.  *Id*.  The court held a hearing on Mr. Wegner's
19  application.  *Id.*  That hearing, in turn, provided the necessary catalyst for the BOP to
20  come forward with an outside date within which Mr. Wegner would be evaluated and
21  treated.  *Id.* That outside date was still 30 days away.  *Id.*  Unsatisfied with the timeframe,
22  Judge Selna responded by (1) ordering the BOP to use its best efforts to cause the
23  appointment to occur within the next *seven* days; and (2) provide the Court within the
24  next seven days "a written opinion from the treating physician to whom Wegner ha[d]
25  been referred that the appointment as presently scheduled is consistent with Wegner's
26  medical needs and sound medical practice." *Id.*

27      7.      Should the Court be disinclined to issue the Order for immediate medical
28  transportation, evaluation and treatment sought herein, Ms. Tucker then respectfully

requests that the Court proceed as Judge Selna did in the *Wegner* matter, calendaring a hearing re: the requested relief, and directing the government to provide details about the BOP's intended course of treatment for Ms. Tucker – that is, whether she is presently scheduled to be seen at White Memorial, the date that such evaluation is scheduled to occur, and the particular medical problems scheduled to be evaluated on that date. The provision of that information – information the BOP has not given defense counsel – will enable the Court to evaluate whether the BOP is in fact acting accordingly to address Ms. Tucker's medical needs, as it so claims.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: November 21, 2013         */s/ Koren L. Bell*
                                KOREN L. BELL